1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
8                     AT SEATTLE

9    CHRISTOPHER THOMAS CHAVEZ,

10                          Petitioner,          Case No. C19-1033-JCC-MAT

11          v.

12   JEFFREY UTTECHT,                            REPORT AND RECOMMENDATION

13                          Respondent.

14

15                            INTRODUCTION

16          Petitioner Christopher Thomas Chavez proceeds with counsel in this 28 U.S.C. § 2254

17   habeas corpus matter.  In March 2014, a Snohomish County Superior Court convicted petitioner

18   on two counts of child molestation in the first degree.  (Dkt. 37, Ex. 1.)  Petitioner now alleges

19   ineffective assistance of counsel and denial of equal protection and due process.  (Dkt. 1.)

20          Counsel for petitioner electronically filed documents from state court proceedings with the

21   petition.  (Dkts. 13-22, 25-35.)  Respondent submitted an answer, along with some portions of the

22   state court record.  (Dkts. 36-37.)  Petitioner filed a motion to strike the answer and a reply (Dkt.

23

REPORT AND RECOMMENDATION - 1

38), and both parties submitted additional briefing (Dkts. 40-41, 43-45).[1]  Now, having considered

the petition, the answer and record, plaintiff's motion and the briefing, the Court recommends the

motion to strike and the habeas petition be DENIED and this case DISMISSED.

<u>BACKGROUND</u>

The Washington Court of Appeals summarized the facts underlying petitioner's conviction

as follows:

> Chavez was a long-time personal friend of Brittany Barbosa
> and had a close relationship with her three daughters, A.R., Se., and
> Sa., whom he had known since they were born. He babysat for the
> children frequently, and even cared for them for extended periods of
> time when Brittany went on vacation.
>
> In June 2011, Brittany married Julio Barbosa. Chavez was
> the officiant at their wedding. On two occasions after Brittany and
> Julio were married, Chavez lived with Brittany and the children. The
> first instance was from September 2011 to May 2012, when Julio
> was deployed to Afghanistan. The second occasion commenced in
> February 2013, after Julio returned from Afghanistan.
>
> In March 2013, A.R. was nine years old. On the evening of
> March 13, A.R. and her younger sister, Se., were watching movies
> with Chavez in his bedroom. Brittany was in her own room, and
> Julio had fallen asleep on the couch.
>
> A.R. and Se. got onto Chavez's bed with him and started
> watching a movie. A.R. fell asleep about twenty minutes into the
> movie. However, A.R. was "not fully asleep yet" and "kind of woke
> up." She then played a game with Chavez in which he drew letters

---

[1] By Order dated November 21, 2019, the Court directed counsel for petitioner to submit, by January 2, 2020 and in redacted and corrected form, a hard copy of the thousands of pages of state court records he previously filed electronically.  (Dkt. 42.)  The Court also requested supplemental briefing from both parties on the merits of two claims respondent argued were unexhausted.  The Court indicated "[b]riefing from counsel for petitioner shall not exceed the number of pages submitted by respondent."  (*Id.* at 1.)  To date, the Court has not received the hard copy of documents it requested from counsel for petitioner.  Counsel also failed to comply with the page limitation set by the Court, submitting some fifty pages of argument despite only seven pages of argument contained in respondent's supplemental brief.  (*See* Dkts. 43 & 44.)  Given petitioner's failure to comply with the Court's directives, the Court will consider only seven pages of argument contained in the supplemental response and responsive to arguments raised in respondent's supplemental brief.  (*See* Dkt. 44 at 22-28.)

on A.R.'s arm and she tried to guess the letters. A.R. taught Chavez to play the game on her arm, but he moved it to her stomach. A.R. told him it was not supposed to be played that way. A.R. fell back asleep.

The next thing A.R. remembered was waking up to Chavez touching her breasts with his hand, skin to skin, with his hand under her shirt. She realized that while she had been sleeping, Chavez had switched places with her sister. She pushed his hand away. Chavez asked A.R., "Do you want me to stop or keep going?" Instead of answering, A.R. ran out of the room. On her way out of the door, A.R. heard Chavez say, "Wait. Come back."

Sometime after midnight, Julio was awakened by A.R., who told him that Chavez had touched her. A.R. was nervous and shaking. Julio asked her where on her body Chavez had touched her, and she pointed to her chest area. She later told a child interviewer that she could feel Chavez touch her chest area "just a little" because she had awakened to the sound of her sister.

Julio took A.R. to the bedroom where Brittany was sleeping and reported that Chavez had touched A.R. inappropriately. A.R. did not want to talk about what had happened, so Brittany pointed to parts of A.R.'s body and asked where Chavez had touched her. A.R. nodded her head when Brittany pointed to her breast area.

Brittany wanted Chavez to leave, so Julio went to Chavez's room and said, "[A.R.] says you touched her. You have to go." Chavez immediately said that he had not touched her. According to Julio, Chavez then asked him, "Do you want to hit me?"

At about 1:30 AM on March 14, Chavez got into his car and telephoned his friend Rayanne Grim. He wanted to go to her home but would not explain why over the telephone. Chavez would only say that he got kicked out of Brittany's house. When he arrived at Grim's house, Chavez joined her on the back porch and smoked a cigarette. He was pacing and nervous. He threw his hands in the air and said, "I touched [A.R.]." He explained that he had been in his room with A.R. watching a movie and he was drawing letters and words on her stomach and accidentally touched her chest. Chavez could not explain how this happened. Grim allowed him to stay the night at her home but informed him the next day that he had to leave because she was not comfortable with what he had done.

Later on March 14, Chavez met Julio back at the Barbosas'

REPORT AND RECOMMENDATION - 3

apartment. Chavez told Julio that he felt like he should "make amends" for what he did. He wanted to know if Julio was going to call the police. Julio and Brittany called the police the next day.

On March 18, A.R. was interviewed by Gina Coslett, a child forensic interview specialist. During that interview, A.R. disclosed for the first time that Chavez had touched her on another occasion some weeks earlier.

On that occasion, Chavez molested A.R. inside a storage building on Grim's property, in which Chavez kept many of his belongings.[2] As A.R. recounted, Chavez started by sitting with A.R. on a couch and "testing if (A.R.) could count by twos all the way to 100." Chavez then placed his hands on A.R's "boobs" and felt them by using all of his fingers in one motion, bringing his fingers towards his palm multiple times. This lasted a couple of minutes before A.R. pushed his hands away from her chest.

Chavez drove A.R. home, and on the way he asked her if she was "okay." A.R. did not respond because she did not want to talk to him. She said it did not "feel like it was right what he did." A.R. decided not to tell her mother about Chavez's misbehavior because she "wanted to give him a second chance." A.R. also said that she did not tell her mother about it because she "kind of forgot about it."

Chavez was prosecuted for two counts of child molestation in the first degree. A jury convicted Chavez of both counts as charged. He was sentenced to indeterminate concurrent terms of incarceration of 80 months to life.

(Dkt. 37, Ex. 2 at 1-5.)

On appeal, petitioner alleged a violation of his constitutional rights in the trial court's refusal to conduct an in camera review of A.R.'s counseling records, by limiting his cross-examination of Grim, and by barring him from calling a particular impeachment witness. (*Id*., Ex. 3.) The Washington Court of Appeals affirmed the conviction. (*Id*., Ex. 2.) Petitioner sought review by the Washington Supreme Court, alleging a violation of his Sixth Amendment right to

---

[2] [State court footnote] Chavez took A.R. on errands to Grim's residence on February 16, 2013 and March 3, 2013. It is not clear on which date the events described occurred.

REPORT AND RECOMMENDATION - 4

confront witnesses in the trial court's failure to conduct an in camera review and disclose records. (*Id*., Ex. 6.)   The court denied the petition for review and the Court of Appeals issued its mandate. (*Id*., Exs. 7-8.)

Petitioner filed a personal restraint petition in the Washington Court of Appeals.  (Dkt. 25-1 at 689-725; Dkt. 26 at 1-29; Dkt. 27 at 1-21.)   He alleged ineffective assistance of counsel through the failure to support his theory of the defense and handle the flaws in the State's case, including ineffective cross-examination; in the failure to obtain A.R.'s counseling records; in not calling expert Dr. Lee Coleman to testify; and in the defective closing argument.   (*See* Dkt. 25-1 at 699.)  The Court of Appeals denied the petition.  (Dkt. 29-1 at 107-15.)

Petitioner sought review by the Washington Supreme Court (*id*. at 158-78), alleging the Court of Appeals erred by:

1. Taking facts from the decision affirming the convictions on direct appeal.

2. Not finding ineffective assistance in the failure to call Dr. Coleman to support a motion to release counseling records.

3. Not finding ineffective assistance in the failure to call Dr. Coleman to testify at trial.

4. Not finding ineffective assistance in the cross-examination of witnesses, including the failure to highlight inconsistencies in A.R.'s statements.

5. Not finding ineffective assistance in closing argument.

6. Finding the personal restraint petition and supportive briefs did not appreciate the strength of the prosecution's evidence.

7. Finding defense counsel employed a reasonable strategy of cross-examination and argument to highlight weakness in the prosecution's case.

8. Finding a failure to show prejudice as a result of ineffective assistance.

9. Summarily denying motions for an evidentiary hearing and for release.

REPORT AND RECOMMENDATION - 5

1      10.    Failing to account for cumulative effect of counsel's errors.

2  (*Id*. at 161-63.)  The Washington Supreme Court denied review (Dkt. 35 at 68-72), as well as a

3  motion to modify that ruling (*id*. at 74-100 and Dkt. 35-1 at 29).[3]

4                                        DISCUSSION

5      Petitioner raises the following grounds for relief in this habeas proceeding:

6      1.    Ineffective assistance of counsel during cross-examinations, including:

7            a.    failure to effectively cross-examine A.R. with inconsistent
                   statements;

8
9            b.    failure to effectively cross-examine witness Rayanne Grim
                   and other witnesses;

10           c.    failure to effectively cross-examine A.R.'s mother about a
                   prior molestation conviction of her ex-husband;

11
12           d.    failure to prevent admission of A.R.'s hearsay statements;

13           e.    failure to provide for use of S.R.'s hearsay statements in
                   cross-examination of A.R.;

14           f.    failure to cure deficient cross-examination of A.R. through
                   effective cross-examination of other prosecution witnesses.

15
16     2.    Ineffective assistance of counsel by not obtaining A.R.'s counseling records
             and by not having an expert testify in support of the motion to obtain the
             records and at trial.

17
18     3.    Ineffective assistance of counsel during closing argument.

19     4.    The state courts deprived petitioner of equal protection and due process
             when ruling on claims in the personal restraint petition by applying the
20           wrong law, applying the correct law unreasonably, determining the facts
             unreasonably, applying no law, and failing to consider the cumulative
             impact of trial counsel's errors.

21

22  _____

23      [3] The record also reflects a correction in the issuance of a Certificate of Finality.  (*See, e.g.*, Dkt. 35
    at 117 and Dkt. 35-1 at 29.)

REPORT AND RECOMMENDATION - 6

1    (*See* Dkt. 1.)  The Court addresses these grounds for relief and petitioner's motion to strike below.

2    A.    Motion to Strike

3         Petitioner filed a motion to strike respondent's answer to the petition, taking issue with the

4    form and content of the answer in various respects.  (*See* Dkt. 38.)  For the reasons explained by

5    respondent (*see* Dkt. 40), petitioner's contentions lack merit.  The Court, in fact, finds petitioner's

6    motion to strike frivolous and subject to denial as such.

7         The Court also finds it necessary to address petitioner's contention as to an absence of a

8    response to quotes and other issues raised in the petition.  These objections are not warranted.  A

9    response to each quote, issue, or contention raised in the writ of habeas corpus would not have

10   been reasonable.  The 213-page writ submitted by counsel contains argument extending well

11   beyond the scope of a habeas petition, verbiage obfuscating the arguments raised, repetitive

12   passages from trial transcripts and other documents, and over 130 often excessively lengthy

13   footnotes.  Counsel's briefing is at times convoluted and unhelpful to his client's interests (*see,*

14   *e.g.*, Dkt. 1 at 114 (n. 52 at page 103) ("Some child 'victims' are not very sympathetic, especially

15   where evidence suggests their claims derive from scorn – the victim's scorn, or the scorn of an

16   adult whose suggestions or other behaviors induce the child's 'remembering' the alleged

17   molestation."))  His motion to strike should be denied.

18   B.    Exhaustion

19        "An application for a writ of habeas corpus on behalf of a person in custody pursuant to

20   the judgment of a State court shall not be granted unless it appears that . . . the applicant has

21   exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  The

22   exhaustion requirement "is designed to give the state courts a full and fair opportunity to resolve

23   federal constitutional claims before those claims are presented to the federal courts," and,

REPORT AND RECOMMENDATION - 7

therefore, requires "state prisoners [to] give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). *Accord Picard v. Connor*, 404 U.S. 270, 275 (1971) (the exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.") (internal quotation marks and citations omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan*, 526 U.S. at 845). "In turn, the state's highest court must have disposed of each claim on the merits." *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).

Respondent argues petitioner failed to properly exhaust his claims of ineffective assistance in the failure to prevent admission of A.R.'s hearsay statements or to provide for use of S.R.'s hearsay statements in the cross-examination of A.R. (identified as claims (1)(d) and (1)(e) above). That is, while raising these claims in his personal restraint petition, petitioner omitted them from his motion for discretionary review.

When a petitioner fails to exhaust state court remedies and the court to which petitioner would be required to present his claims in order to satisfy the exhaustion requirement would now find the claims to be procedurally barred, there is a procedural default for purposes of federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Respondent maintains petitioner's unexhausted claims are now procedurally barred under state law. *See* RCW 10.73.090(1) (collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final); RCW 10.73.090(3)(b) (judgment final "[t]he date that

REPORT AND RECOMMENDATION - 8

1   an appellate court issues its mandate disposing of a timely direct appeal from the conviction"); and

2   (Dkt. 37, Ex. 8 (mandate issued March 18, 2016)).  *See also* RCW 10.73.140 (barring the filing of

3   a successive collateral challenge).  Also, when a state prisoner defaults on his federal claims in

4   state court pursuant to an independent and adequate state procedural rule, federal habeas review

5   of the claims is barred unless the prisoner can demonstrate cause, i.e. some external objective

6   factor that prevented compliance with the procedural rule, and prejudice, i.e. that the claim has

7   merit.  *Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 263 (1989).  Only in an

8   "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice

9   to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in

10  the conviction of a defendant who is actually innocent.  *Murray v. Carrier*, 477 U.S. 478, 495-96

11  (1986).  Respondent asserts plaintiff's failure to show the cause and prejudice or actual innocence

12  required to excuse his procedural default.

13       Petitioner maintains he exhausted the claims in question, while conceding he "did not re-

14  state" them "quite expressly" in his petition for review.  (Dkt. 38 at 8.)  He asserts he nonetheless

15  presented the claims "quite directly and voluminously" and "clearly" and "often" through

16  documents attached to his motion, references to those attached documents, and in supplemental

17  filings.  (*Id.* at 8-9.)  Petitioner maintains he was not obliged to restate his claims in his petition

18  for review, arguing *Dye v. Hofbauer*, 546 U.S. 1 (2005), rather than *Baldwin*, 541 U.S. 27, controls

19  the issue of exhaustion in this case.

20       The exhaustion rule requiring presentation of a claim to the state's highest court is well-

21  settled.  *See, e.g., Murray v. Schriro*, 882 F.3d 778, 807 (9th Cir. 2018) ("To satisfy the exhaustion

22  requirement, a petitioner 'must "fairly present" his claim in each appropriate state court (including

23  a state supreme court with powers of discretionary review . . .')") (quoting *Baldwin*, 541 U.S. at

REPORT AND RECOMMENDATION - 9

29).  *Accord James*, 24 F.3d at 24 (a complete round of the state's established review process includes presentation of a petitioner's claims to the state's highest court).  As explained by respondent (*see* Dkt. 40 at 4-5), the Supreme Court's decision in *Dye* did not involve the issue of fair presentation to a state's highest court.  In that case, the Supreme Court reaffirmed the principal that federal courts must review the briefs submitted in state court, not only the state court opinion, to determine whether a petitioner raised a federal claim subject to habeas review, rather than solely a state law claim.  *Dye*, 546 U.S. at 3-4 ("The Court of Appeals examined the opinion of the state appellate court and noted that it made no mention of a federal claim. That, however, is not dispositive. Failure of a state appellate court to mention a federal claim does not mean the claim was not presented to it.")  Because the petitioner in *Dye* clearly set forth in his state-court brief a claim "based, at least in part, on a federal right[,]" the appellate court erred in concluding otherwise.  *Id*. at 4.  This decision has no bearing on the question raised in this matter.

This Court must determine whether petitioner satisfied the exhaustion requirement through the citation to and attachment of documents/exhibits referencing claims not set forth in the petition itself.  In *Baldwin*, 541 U.S. at 30-32, the Supreme Court observed federal habeas corpus law does not require a state court judge to read through lower court opinions or briefing to discover the existence of a federal claim.   "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Id*.

In some circumstances, incorporation by reference of a prior court document may satisfy the exhaustion requirement.  In *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted), the Ninth Circuit explained fair and full presentation satisfying

exhaustion occurs with presentation of a federal constitutional claim "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim[.]" In *Insyxiengmay*, the petitioner presented to the state supreme court three federal constitutional claims in an appendix consisting of a full copy of his personal restraint petition, and devoted the body of his motion for discretionary review to the state appellate court's dismissal on the grounds of timeliness. *Id*. Noting the appendix contained the arguments as to the constitutional claims, the Court found clear presentation of those claims as federal issues to the state supreme court. The Court distinguished cases involving arguments relying on documents never presented to the higher court. *Id*. at 668-69. *Insyxiengmay*, in the appendix filed in the state supreme court, "presented extensive argument in support of all three claims as well as citations to the requisite authority and to relevant parts of the record." *Id*. at 669.[4]

This Court has found exhaustion where a petitioner's motion seeking discretionary review identifies an issue for review and attaches briefs or other documents to the petition that contain the arguments in support of the issue. *See, e.g., Silva v. Holbrook*, No. C16-0378, 2016 WL 8235139 at *6 (W.D. Wash. Nov. 2, 2016), *adopted*, 2017 WL 568822 (W.D. Wash. Feb. 13, 2017) (in motion for discretionary review petitioner asserted entitlement to discharge based on "sixteen (16) discrete issues raised in the operative pleadings herein[,]" and attached copies of his personal restraint petition and supplemental petition); *Wiggin v. Miller-Stout*, No. C14-1474, 2015 WL 2137319 *7 (W.D. Wash. Mar. 20, 2015) ("[P]etitioner arguably put the Washington Supreme Court on notice of his claims by reasserting them in a summary fashion in his motion for

---

[4] Respondent also argues Washington law does not allow for incorporation by reference. *See, e.g.*, *State v. I.N.A.*, ___ Wn. App. 2d ___, 446 P.3d 175, 177 (2019) (citing *State v. Gamble*, 168 Wn.2d 161, 180, 225 P.3d 973 (2010)). The Court, however, considers this issue pursuant to *Insyxiengmay* and subsequent case law.

discretionary review and by specifically incorporating into his motion all of the arguments contained in his personal restraint petition."), *adopted*, 2015 WL 2137439 (W.D. Wash. May 6, 2015).  *See also Miller v. Quinn*, No. 07-35531, 2009 WL 117985 at *1 (9th Cir. Jan. 9, 2009) (finding exhaustion where petition identified a claim, but did not refer to federal constitutional issues, but relevant law addressing federal constitutional issues was discussed extensively in attachments to petition)

The eighteen-page petition petitioner filed in the Washington Supreme Court identifies ten matters for review, consistently described in the table of contents, the identification of matters presented for review, and within the body of the petition.  (Dkt. 29-1 at 158-78.)  Those ten matters do not include either of the allegedly unexhausted claims at issue here.  Nor did petitioner indicate within the petition that, in addition to the ten identified claims, he was challenging all prior contentions in his personal restraint petition.  Petitioner's assertion of exhaustion therefore rests on the fact he attached documents containing those other claims.[5]  (*See, e.g.*, Dkt. 29-1 at 181 (appendix to petition for review identifying his personal restraint petition, opening brief, exhibits, and subsequent briefing as exhibits).)  This mere attachment of documents has been found insufficient to establish exhaustion.  *See, e.g., Taylor v. Evans*, No. 09-16917, 2011 U.S. App. LEXIS 128077 at *3-4 (9th Cir. Jan. 20, 2011) (finding petitioner did not present a federal constitutional claim or cite to requisite authority as required by *Insyxiengmay*: "Rather, he simply

---

[5] Petitioner asserts he presented the claims as follows: "(a) with several Washington-Supreme-Court-filed documents, including (but not only) Petitioner's Washington state PRP Opening Brief [], which documents were Exhibits of Petitioner's Motion praying Washington Supreme Court discretionary review, Exhibits included in the Appendix attached to that Motion;" "(b) by that same Washington Supreme Court review Motion's citing those documents often and by references those cited documents rendered;" and "(c) with references supplied by supplemental documents Petitioner filed in pursuit of that same Washington Supreme Court review Motion – the supplemental documents being a reply brief and a motion praying modification of an Order of the Commissioner of the Washington Supreme Court."  (Dkt. 38 at 10.)

REPORT AND RECOMMENDATION - 12

1  attached a memorandum of the Sacramento County Superior Court to his petition, which

2  memorandum mentioned the claim.")

3      The Court may nonetheless consider unexhausted claims on the merits.  28 U.S.C. §

4  2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

5  notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

6  State.")  Thus, out of an abundance of caution, the Court here considers the unexhausted claims.

7  C.    Habeas Standard

8      Federal habeas corpus relief is available only to a person "in custody in violation of the

9  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the

10  Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas corpus petition may

11  be granted with respect to any claim adjudicated on the merits in state court only if the state court's

12  decision was contrary to or involved an unreasonable application of clearly established federal

13  law, as determined by the United States Supreme Court.  § 2254(d)(1).  A petition may also be

14  granted if the decision was based on an unreasonable determination of the facts in light of the

15  evidence presented in the state court proceeding.  § 2254(d)(2).

16      Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may grant the writ

17  only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

18  question of law, or if the state court decides a case differently than the Supreme Court has on a set

19  of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under

20  the "unreasonable application" clause, a federal court may grant the writ only if the state court

21  identifies the correct governing legal principle from the Supreme Court's decisions but

22  unreasonably applies that principle to the facts of the prisoner's case.  *Id*. at 412-13.

23      A state court's decision may be overturned only if the application of Supreme Court

REPORT AND RECOMMENDATION - 13

holdings is "'"objectively unreasonable,'" not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.*; *accord White*, 572 U.S. at 419.

In considering whether a state court decision was contrary to or an unreasonable application of clearly established law or an unreasonable determination of the facts, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).  State court findings of fact are presumptively correct in federal habeas proceedings, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

D.   Evidentiary Hearing

Pursuant to § 2254(e)(2), if the petitioner failed to develop the factual basis of a claim in state court, the federal court may not hold an evidentiary hearing on that claim unless two prerequisites exist.  First, the claim must rely on either (a) a new rule of constitutional law made retroactive to cases on collateral review by the United States Supreme Court and previously unavailable, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence.  § 2254(e)(2)(A)(i)-(ii).  Second, the facts underlying the claim must establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the petitioner guilty.  § 2254(e)(2)(B).

REPORT AND RECOMMENDATION - 14

Failure to develop a claim's factual basis in state court is not established unless there is a lack of diligence or some greater fault attributable to the petitioner or his counsel. *Williams v. Taylor*, 529 U.S. 420, 432, 437 (2000); *Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir. 1999). Diligence, at minimum, requires that petitioner sought an evidentiary hearing in state court pursuant to applicable procedures. *Id.* A habeas petitioner has not failed to develop the factual basis of a claim where he was denied an evidentiary hearing in state court. *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997).

The mere fact an evidentiary hearing is not precluded by § 2254(e)(2) does not entitle a petitioner to such a hearing. *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000). Instead, the court retains discretion to determine whether an evidentiary hearing is appropriate or required under the pre-AEDPA standard governing evidentiary hearings. *Baja*, 187 F.3d at 1078. *See also Downs*, 232 F.3d at 1041. In deciding whether to grant an evidentiary hearing, the court must consider whether such a hearing could enable an applicant to prove factual allegations, which, if true, would entitle the applicant to federal habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The court need not hold an evidentiary hearing where the petition raises solely questions of law or where the issues may be resolved based on the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). "It follows that, if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Landrigan*, 550 U.S at 474. *Accord Totten*, 137 F.3d at 1176. "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Landrigan*, 550 U.S. at 473-75 (cited source omitted).

///

REPORT AND RECOMMENDATION - 15

1    E.    Petitioner's Grounds for Relief

2        1.    Ineffective Assistance of Counsel (Grounds 1-3):

3        The Sixth Amendment of the United States Constitution guarantees a criminal defendant the

4    right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Courts

5    evaluate claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland*.

6    Under that test, a defendant must prove that (1) counsel's performance fell below an objective

7    standard of reasonableness and (2) a reasonable probability exists that, but for counsel's error, the

8    result of the proceedings would have been different. *Id*. at 687-94.

9        When considering the first prong of the *Strickland* test, judicial scrutiny must be highly

10    deferential.  *Id*. at 689.  There is a strong presumption that counsel's performance fell within the

11    wide range of reasonably effective assistance.  *Id*.  The Ninth Circuit has made clear that "'[a] fair

12    assessment of attorney performance requires that every effort be made to eliminate the distorting

13    effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

14    evaluate the conduct from counsel's perspective at the time.'"  *Campbell v. Wood*, 18 F.3d 662, 673

15    (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

16        The second prong of the *Strickland* test requires a showing of actual prejudice.  A petitioner

17    "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

18    result of the proceeding would have been different.  A reasonable probability is a probability

19    sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

20        The reviewing court need not address both components of the inquiry if an insufficient

21    showing is made on one component.  *Id.* at 697.  Furthermore, if both components are to be

22    considered, there is no prescribed order in which to address them.  *Id*.

23        Where a state court rejected an ineffectiveness claim on the merits the "pivotal question"

REPORT AND RECOMMENDATION - 16

in a § 2254 proceeding "is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. The Court employs a "'doubly deferential'" review, taking a "'highly deferential' look at counsel's performance [pursuant to *Strickland*, and] through the 'deferential lens of 2254(d).'" *Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2, 123 (2009), and *Strickland*, 446 U.S. at 689). A petitioner "must demonstrate that it was necessarily unreasonable" for the state court to rule as it did. *Id.*

a. <u>Cross-examinations (Ground 1)</u>:

Petitioner contends his trial counsel provided ineffective assistance in the cross-examination of witnesses. Specifically, he maintains the failure to effectively cross-examine (a) the victim, A.R., with inconsistent statements, (b) Grim and other witnesses, and (c) A.R.'s mother about a prior molestation conviction of her ex-husband, and ineffective assistance in not (d) objecting to the admission of A.R.'s hearsay statements, (e) attempting to use hearsay statements made by A.R.'s sister to cross-examine A.R., and (f) curing deficient cross-examination of A.R. through the effective cross-examination of other witnesses.

The Washington Court of Appeals addressed petitioner's claim as follows:

> Chavez contends that defense counsel was ineffective for failing to effectively cross examine the State's witnesses, including the victim, and failing to highlight inconsistencies in the victim's statements to the forensic child interviewer. He claims that trial counsel failed to develop and support the defense theory that the manner of questioning the victim was suggestive and that the victim's parents and law enforcement suffered biases and preconceptions that caused them to misinterpret the victim's disclosures and make a false assumption that A.R. was abused. But the jury watched the recording of the interview and reviewed a written transcript of the interview and was therefore aware of any discrepancies [in] A.R.'s account and could evaluate the manner of questioning. And review of the transcript shows that defense counsel cross-examined witnesses regarding bias, inconsistencies in the victim's statements, lack of corroboration of some details, and

REPORT AND RECOMMENDATION - 17

alleged shortfalls in the interview method and investigation.

For instance, Chavez claims that counsel failed to cross examine Grim about a remark she made to law enforcement that her judgment was "clouded." But Chavez fails to show that further inquiry about this remark would have led to a different result. It is clear from the testimony that what Grim meant was that she felt she should have trusted her instinct and investigated when she noticed that Chavez and the victim were alone in the storage area. Further emphasis on [this] point would not likely have helped Chavez. Counsel forced Grim to admit that, based on her own personal experiences, she was generally uncomfortable about men being around young children and that Chavez repeatedly insisted that the touching was inadvertent. Grim also admitted that her original statement did not contain some details that she testified to, that she was motivated by a desire to help the young victim, and that although she would not allow a child molester to stay in her house, she allowed Chavez to stay there and then helped him secure alternative housing.

Chavez also argues that counsel should have cross examined A.R. more extensively, especially with regard to the timing of dreams about molestation that she described. He appears to suggest that counsel could have relied on this line of questioning to argue that the touching was something the victim dreamed, but did not actually happen. These arguments ignore the significant risks of aggressively cross examining the nine year-old victim and the fact that Chavez admitted to Grim and her husband within hours of the March 13 incident that he accidentally touched the victim's chest.

(Dkt. 29-1 at 112-13.) The Washington Supreme Court reached the same conclusion. (Dkt. 35 at 70-72.) With respect to inconsistencies in A.R.'s statements and how conversations with her mother and the counseling sessions may have influenced her memory, the Court noted "the jury watched a recording of the victim interview and was thus directly aware of any alleged inconsistencies between the interview and her testimony." (*Id*. at 71.) The Court further stated: "Defense counsel's decision to not stress these inconsistencies may have been a reasonable strategic decision, but in any event Mr. Chavez cannot demonstrate prejudice where the jury was aware of them." (*Id*.)

REPORT AND RECOMMENDATION - 18

"Under *Strickland*, counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill." *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 688-89). Moreover, "[a] reasonable tactical choice . . . is immune from attack under *Strickland*." *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir. 1997) (citing *Strickland*, 466 U.S. at 689-91). A tactical decision to, for example, refrain from cross-examining a witness or asking a particular line of questions is given great deference and need only meet the objectively reasonable standard. *Dows*, 211 F.3d at 487 (concluding that, while trial counsel may have conducted "a more thorough and vigorous examination of the alleged rape victim, . . . the state courts' conclusion that his conduct was objectively reasonable is not an incorrect application of Supreme Court precedent or an unreasonable determination of fact sufficient to grant a petition for habeas corpus under section 2254.") This Court, for the reasons set forth below, concludes petitioner is not entitled to habeas relief in relation to any of his claims of ineffective assistance of counsel in the cross-examination of witnesses at trial.

(i)    A.R.'s inconsistent statements:

Petitioner asserts counsel failed to impeach A.R. with prior inconsistent statements. He points to the fact A.R. first alleged only one incident of touching and days later reported another, earlier incident. He contends effective cross-examination would have suggested the touching never happened, was something A.R. dreamed, and/or was a memory of a touching by a different man. He maintains counsel's failure to impeach prejudiced his defense by, for example, depriving him of the admission of the defense's forensic interview of A.R.

In cross-examination, defense counsel raised questions addressing A.R.'s memories and reporting of events. A.R. testified she watched the video of her forensic interview, that watching the video "[s]ort of" helped her remember, and that she could not remember the number of times

REPORT AND RECOMMENDATION - 19

1   she watched the video.  (Dkt. 25-1 at 297-98.)  A.R. admitted she could not remember previously

2   stating the incident on the night of March 13, 2013 was the first time she had been touched; that,

3   a few weeks prior to her testimony, she said something "totally different" about her nightmares;

4   and that she had forgotten about the earlier alleged touching in the "spider house" because she was

5   having "too much fun playing and stuff[.]"  (*Id*. at 298, 305-07.)  The court thereafter recessed for

6   the day and counsel had no further questions for A.R. on the following day (*id*. at 321).

7           The transcript does show defense counsel struggled with the method of impeachment the

8   trial court required in relation to A.R.'s testimony.  (*See id*. at 298-304, 308-16.)  However, it also

9   reflects counsel's reasonable strategic decision to not aggressively cross-examine a ten-year-old

10  testifying about allegations of child molestation.  It further remains that counsel successfully

11  identified inconsistencies between A.R.'s testimony and her prior statements and that the jury had

12  other evidence of such inconsistencies through the video and transcript of A.R.'s forensic

13  interview.  Counsel also obtained relevant evidence through his more aggressive cross-

14  examinations of adult witnesses, including evidence refuting a suggestion A.R. had not been

15  touched or merely dreamed she had been touched on March 13th.  Petitioner therefore does not

16  establish either that his counsel's performance fell below an objective standard of reasonableness

17  or that further or a more aggressive cross-examination of A.R. would have altered the outcome.

18                          (ii)     Other witnesses:

19          Petitioner avers ineffective assistance in the cross-examination of other witnesses.  As

20  described by the Washington Court of Appeals, petitioner claims counsel failed to highlight

21  inconsistencies, expose the suggestive questioning of A.R., or develop and support the theory the

22  witnesses' biases and preconceptions caused them to misinterpret A.R.'s disclosures and make a

23  false assumption of abuse.  (Dkt. 29-1 at 112.)  For example, with Ms. Grim and Detective

REPORT AND RECOMMENDATION - 20

Hamilton, petitioner alleges deficiencies in questioning regarding the spider house incident and Ms. Grim's "clouded" judgment given her personal history.  (*See* Dkt. 1 at 40-46.)  He points to, *inter alia*, Julio Barbosa's biases based on his sister's experience with child sexual molestation and his resentment and jealousy of petitioner, and Brittany Barbosa's biases and assumption of molestation resulting from her ex-husband's sexual molestation conviction.

Petitioner also raises two related claims.  He avers ineffective assistance in counsel's failure to secure the admission of evidence relating to the sexual molestation conviction of Ms. Barbosa's ex-husband.  He claims counsel could have cured the deficient cross-examination of A.R. through effective cross-examination of the other prosecution witnesses.  He states, for example, counsel should have further pursued lines of inquiry showing Mr. and Ms. Barbosa "created a fairy tale of Petitioner's molesting [A.R.]", and deprived the jury of evidence that would have created "doubt whether the alleged molestation was actual rather than a delusion stirred by [A.R.'s] nightmare, repressed and transferred memory, her parent's biases, and the reality-tainting effects of police interrogations, a State sponsored forensic interview, and [A.R.'s] counseling[.]" (Dkt. 1 at 93-94, 112.)

Counsel cross-examined both Ms. Grim and Detective Hamilton about Ms. Grim's childhood issues and "clouded" judgment.  (Dkt. 25-1 at 466, 546, 553.)  Ms. Grim agreed she was "almost always . . . uncomfortable around grown men and young children" (*id*. at 466-67) and Detective Hamilton confirmed Ms. Grim's report her judgment may have been clouded based on her childhood experiences (*id*. at 546).  As found by the Court of Appeals, further inquiry about this remark would not likely have been helpful.  (Dkt. 29-1 at 112 ("It is clear from the testimony that what Grim meant was that she felt she should have trusted her instinct and investigated when she noticed that Chavez and the victim were alone in the storage area."))  Counsel also secured

1    numerous other concessions from Ms. Grim, including inconsistencies between her testimony and

2    prior statements (Dkt. 25-1 at 467-69, 544-45), that petitioner had consistently maintained the

3    touching was accidental (*id*. at 459-60, 469-70), that she had been motivated by the desire to help

4    a young child (*id*. at 502), and that, despite her history and the allegations, she allowed petitioner

5    to spend that night at her house and went on to help him in other ways (*id*. at 467, 503, 505-06).

6        Counsel questioned Mr. Barbosa about a variety of issues and events, such as his jealousy

7    of petitioner's close relationship with A.R. and her sisters, his desire to protect A.R., and his own

8    sister's history. (Dkt. 25-1 at 371-75.) Mr. Barbosa conceded A.R. did not tell him precisely how

9    or where she had been touched, leading him to assume and to tell Ms. Barbosa A.R. had been

10   molested, that petitioner denied doing anything wrong when confronted, and that, contrary to the

11   prosecutor's characterization, petitioner never "fled the scene[.]" (*Id*. at 375-78.) Mr. Barbosa

12   agreed that, on the following day, A.R. acted as if nothing had happened. (*Id*. at 383.) He admitted

13   he could not remember telling the police that petitioner had said something to the effect of "go and

14   ahead and hit me[.]" (*Id*. at 379-81.)

15       Ms. Barbosa, on cross-examination, admitted she only noticed behavioral changes after the

16   second incident and that they began only after the police investigation commenced. (*Id*. at 419-

17   20.) She admitted that, while she recalled what A.R. said regarding March 13th during direct

18   examination, she had been unable to recall the same information just a few days earlier. (*Id*. at

19   430.) She conceded A.R. had not told her about the spider house incident and that she spoke to

20   A.R. about the March 13th incident prior to the forensic interview. (*Id*. at 431-33.)

21       In sum, contrary to petitioner's contentions and as found by the state court, the transcript

22   shows defense counsel cross-examined witnesses regarding biases, inconsistencies, absent

23   corroborating details, and shortfalls in witness interviews and the investigation. (*See* Dkt. 29-1 at

REPORT AND RECOMMENDATION - 22

112.) Petitioner does not establish an unreasonable determination of these claims by the state court or otherwise show his counsel's performance fell below an objective standard of reasonableness and resulted in prejudice.

In addition, while petitioner believes counsel should have secured the admission of Ms. Barbosa's ex-husband's conviction, there is no dispute counsel sought to introduce that evidence and the record shows his sustained effort to admit and utilize the evidence was not objectively unreasonable. (*See* Dkt. 25-1 at 420-29.) Nor does petitioner show the state court unreasonably found an absence of prejudice. (*See, e.g.*, Dkt. 29-1 at 114 ("Nothing in the record suggests that the [trial] court abused its discretion [in excluding evidence about the former spouse's conviction], especially given the lack of information in the record about the nature and timing of this conviction and lack of evidence showing a connection between the conviction and the mother's state of mind.")) This contention, as with the other cross-examination arguments, lacks merit.

(iii)    A.R. hearsay:

Petitioner avers ineffective assistance in the failure to object to the admission of A.R.'s hearsay statements. While there is no discussion of this particular claim by a state court, this Court presumes a state court adjudicated the merits of claims when the opinion expressly addresses some, but not all claims raised in a petition. *Johnson v. Williams*, 568 U.S. 289, 292-93, 298-301 (2013).

Washington law provides for the admissibility of out-of-court statements by a testifying child, even if not otherwise admissible under the rules of evidence, where the statement is made by a child under the age of ten; describes an act or attempted act of sexual contact with or on the child by another person; and the court finds, in a hearing conducted outside the presence of the jury, the time, content, and circumstances of the statement to provide sufficient indicia of reliability. RCW 9A.44.120. Factors considered in the reliability determination include: (1)

REPORT AND RECOMMENDATION - 23

whether the child has an apparent motive to lie; (2) the general character of the child; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the statements and the relationship of any witnesses; (6) the presence of an express assertion about a past fact; (7) whether cross examination could not show the child's lack of knowledge; (8) the possibility the child's faulty recollection is remote; and (9) whether the circumstances surrounding the statement are such that there is no reason to suppose the child misrepresented the defendant's involvement. *State v. Swan*, 114 Wn.2d 613, 647-48, 790 P.2d 610 (1990) (citing *State v. Ryan*, 103 Wash.2d 165, 175–76, 691 P.2d 197 (1984), and *Dutton v. Evans*, 400 U.S. 74, 88–89 (1970)). "The trial court is necessarily vested with considerable discretion in evaluating the indicia of reliability." *Id.* at 648.

In this case, the trial court held a "child hearsay" hearing on the admissibility of A.R.'s out of court statements. (*See* Dkt. 25-1 at 4-79.)  Defense counsel conceded at the outset not to object to the admissibility of this evidence, but the court held the hearing to enter the necessary findings. (*Id*. at 8-9.)   The judge took testimony from A.R., Mr. and Ms. Barbosa, and a child interview specialist, and watched the video of the child specialist's interview of A.R.  (*Id*. at 10-74.)

The judge found A.R. competent to testify and with no apparent motive to lie, noting her positive relationship with petitioner and between petitioner and A.R.'s entire family, and the absence of a triggering event precipitating a lie, disagreement, or breakdown in the relationship that could have caused a fabrication.  (*Id*. at 76-78.)  She found no problem with A.R.'s character, with no apparent behavioral problems or evidence of deceit.  She noted witnesses to the statements included A.R.'s mother and step father, the statements "spontaneously made within seconds, if not minutes after the alleged events[,]" therefore rendering them "more likely truthful than untruthful[]" and showing an absence of time in which statements could have been fabricated.  The

REPORT AND RECOMMENDATION - 24

judge stated she found A.R. "very credible as a witness[,]" noting her specific recall in her statements of events and the manner in which they occurred and consistency in the three different versions of events she gave, and found her memory of past facts specific and credible. (*Id.* at 78.) She found it unlikely A.R.'s recollection could be found faulty, noting consistency between her testimony and the video. Finally, the judge found the totality of the circumstances did not suggest any misrepresentation and, instead, suggested A.R. was truthful and credible. (*Id.* at 78-79.)

Petitioner argues his counsel should have objected and argued against treating A.R.'s hearsay as admissible. He maintains the trial judge did not address the fifth or eighth factors and improperly invaded the province of the jury in finding A.R. credible and truthful, when tasked only with determining reliability. He asserts the court's bias threatened future rulings and that counsel should not have yielded to admissibility as substantive evidence and should have provided only for use to impeach prior inconsistent statements or to refresh memories.

A judge need not find each factor satisfied before finding a child's hearsay statements reliable. *Swan*, 114 Wn.2d at 652. Nor did the judge in this case invade the province of the jury where she made comments as to credibility and truthfulness outside the presence of the jury and the jury was properly instructed of its role to determine witness credibility. (*See* Dkt. 25-1 at 653.) *See also Swan*, 114 Wn.2d at 666 and 651 ("[T]he admissibility of child hearsay depends upon a series of decisions made only after evaluating the competency and credibility of witnesses."; finding child witnesses' " repetition of similar and unusual details of abuse tends to establish that their descriptions were credible even absent cross examination.") Counsel's performance can, moreover, be said to reflect a reasonable strategic decision given the evidence and the desire to utilize the statements for other purposes, including the demonstration of inconsistencies between prior statements and testimony at trial. Petitioner does not, as such, establish ineffective assistance.

REPORT AND RECOMMENDATION - 25

(iv)     <u>S.R. hearsay</u>:

Petitioner argues counsel should have moved for the admission of and utilized statements S.R., A.R.'s sister, made in a forensic interview.  He identifies inconsistencies between S.R.'s statements and the statements and testimony of A.R., and maintains their relevance to his defense in suggesting the alleged touching never occurred or was the act of another individual.

The court held a pretrial hearing on the prosecution's motion to exclude S.R.'s hearsay statements.  (Dkt. 25-1 at 81-90.)  The prosecutor stated he did not intend to call S.R. as a witness and moved to exclude both the video of the forensic interview and any of S.R.'s statements. Defense counsel opposed the motion.  He described the relevance of S.R.'s statements and his intention to use them as part of the basis for the expert opinion of Dr. Coleman that A.R.'s allegations were unreliable and in establishing the inadequacy of Detective Hamilton's investigation.  (*Id*. at 82-87.)  The court observed that, since the substance of the statements were not child hearsay, their admissibility fell under Evidence Rules 801 and 802.  Defense counsel subsequently clarified he intended to ask whether the detective confronted A.R. after hearing S.R.'s contradictory statements.  (*Id*. at 87-88 (". . . I'm going to cross examine the detective on it and establish that there was evidence that could have been followed up and did you do it[.]"))  The trial judge ruled she would allow counsel to use the statements "for that purpose only."  (*Id*. at 89.)

Defense counsel did not call Dr. Coleman to testimony.  However, both defense counsel and the prosecutor asked Detective Hamilton about S.R.'s interview.  (*See, e.g.*, Dkt. 25-1 at 548.) After obtaining the detective's agreement S.R. had not corroborated portions of A.R.'s statements or the allegation of sexual molestation as a general matter, defense counsel asked what, if anything, the detective had done to follow up and the detective conceded, "I did not do any follow up on that."  (*Id*. at 548-49.)

REPORT AND RECOMMENDATION - 26

Petitioner does not demonstrate ineffective assistance of counsel.  Counsel opposed the motion to wholly exclude the hearsay statements and succeeded in obtaining their use for a limited purpose.  His use of this evidence in accordance with the trial court's ruling runs counter to the allegation of ineffective assistance.

It is further noteworthy that, after Detective Hamilton testified, the prosecutor sought to admit the video of S.R.'s forensic interview into evidence as hearsay of a non-testifying witness, positing defense counsel would "not object because he wants it in as well[.]"  (*Id*. at 564-65; *see also id*. at 552-53 (earlier, before withdrawing the question, the prosecutor wondered whether Detective Hamilton thought it would be helpful for the jury to see S.R.'s interview).)  However, defense counsel did object, noted the motion in limine and his limited purpose of using the statements of S.R. to go into the fairness of the investigation, and stated the prosecution's intention to admit the video was "something that could have been handled a long time ago[.]"  (*Id*. at 565.)  The prosecutor thereafter agreed he would not offer the video into evidence.   The record supports the conclusion defense counsel made a strategic decision to admit the evidence for a limited purpose.  Petitioner does not demonstrate this decision amounts to performance falling below an objective standard of reasonableness or that, even assuming a ruling allowing for admission of the hearsay statements, a reasonable probability the evidence would have affected the verdict.

   b. <u>Counseling records and expert evidence (Ground 2)</u>:

Petitioner avers ineffective assistance of counsel in the failure to obtain the release of records from two counseling sessions A.R. engaged in approximately two months after she disclosed her allegations against petitioner.  He also alleges ineffective assistance in the failure to have an expert testify both in support of the motion to compel disclosure of the records and at trial.

Prior to trial, petitioner sought to compel disclosure of A.R.'s counseling records from third

party Compass Health.  (Dkt. 37, Ex. 2 at 5 & n.3.)  Petitioner claimed the government arranged

the counseling due to the sexual abuse allegations and that "'suggestive questioning' led to the

disclosure during the forensic interview."  (*Id.* at 5.)  He asserted the existence of but did not

provide expert opinion evidence consistent with this theory.   A victim advocate testified the

counseling referral occurred because A.R. was having trouble sleeping, not due to the molestation

allegations.  (*Id.* at 6.)  The court also considered a transcript of a defense interview of Ms. Barbosa.

(*Id.* at 6-7.)  Counsel for petitioner explained his argument as based on a reasonable inference from

the facts, including the fact Ms. Barbosa told the counselor about the allegations in A.R.'s

presence, and based on counsel's many years of professional experience.   The court denied

counsel's motion, explaining:  "'The Court understands and respects your view that this [review

of the records] may produce valuable information to the defense, but your belief that it may is

based upon supposition, it's based upon inference.  It's not based upon any facts.'"  (*Id.* at 7.)

    In rejecting a related due process claim on direct appeal, the Washington Court of Appeals

held the trial court properly denied the motion because the counseling records were privileged

under Washington law and petitioner had not made the particularized factual showing necessary

to overcome the privilege – that the records contained material evidence, with a reasonable

probability of impacting the trial:

> Herein, Chavez asserted that "[i]t is a fact that evidence directly
> related to these allegations [of abuse], and A[.]R[.]'s perceptions of
> what allegedly happened are in these record[s]."  And, indeed, he
> presented some evidence in support of his assertion.  In particular,
> he proffered Brittany's statement that, at the outset of the
> counseling, she had briefly explained the alleged abuse to the
> counselor in front of A.R.  Chavez also relied upon his attorney's
> "18 years of doing a lot of criminal defense and public defense and
> just knowing that this is what happens."  But this, of course, was
> pure speculation.

REPORT AND RECOMMENDATION - 28

1   (*Id.* at 8-9 (footnote omitted).)   The court contrasted petitioner's weak basis for the request to the

2   victim advocate's testimony she made the referral due to A.R.'s trouble sleeping and other

3   statements from Ms. Barbosa "indicating that, as far as she could ascertain, A.R. had spent her

4   time in counseling hand-making tools to help her cope, including a beaded talisman and cards with

5   written affirmations."   (*Id.* at 9.)   The court found a failure to establish materiality, noting the

6   counseling took place in May 2013, *after* A.R.'s March 2013 disclosure and concluded the theory

7   the "disclosures were the product of suggestion or suggestive questioning" or "learn[ed] truths"

8   ran contrary to the undisputed timeline of events.   (*Id.* at 9-10.)   The court also noted petitioner's

9   failure to provide purported expert evidence in support.

10      In his personal restraint petition, petitioner alleged ineffective assistance in the failure to

11   present expert testimony in support of the motion to compel.   The Court of Appeals ruled:

12      Chavez simply relies on a different legal theory and
        emphasizes different facts to make the same argument.   But even
13      assuming he is able to relitigate the matter, there is nothing in the
        record to suggest that expert testimony would have led to a different
14      decision regarding the release of the records or that anything in the
        counseling records would have changed the result of the trial.   The
15      record indicates that the expert, child psychiatrist Dr. Lee Coleman,
        believed that the counseling records were important when the
16      counseling was related to the abuse because counseling has potential
        to influence and cement the memories and perceptions of a child.
17      But as this court pointed out, there is no evidence to support the
        assertion that the victim discussed the molestation during the two
18      counseling sessions and nor is there any evidence that explains how
        counseling in May 2013 could have contributed to a suggestive
19      process that led to the victim's disclosures in March 2013.

20   (Dkt. 29-1 at 110-11.)   The Washington Supreme Court agreed petitioner had not established

21   expert testimony would have produced a different result and that the records request was wholly

22   based on speculation as to their content.   (Dkt. 35 at 71.)

23      With respect to calling Dr. Coleman as a witness at trial, the Court of Appeals noted counsel

REPORT AND RECOMMENDATION - 29

had brought the expert to Washington, but decided against calling him "because he felt that he was effectively using the information gleaned from the consultation to cross examine the witnesses." (Dkt. 29-1 at 113.)  The court held:

> Chavez claims that Dr. Coleman could have testified about witness bias and "distorting suggestions and apprehension-contorting psychological forces, memory transfers, memory-blendings, memory-falsifyings, and perception-taints" that made the State's evidence in this case unreliable.  Specifically, Chavez suggests that Dr. Coleman could have testified that the victim's mother was hypersensitive to an allegation of sexual assault because her former spouse was convicted of a sex offense.  The trial court excluded evidence about the former spouse's conviction.  Nothing in the record suggests that the court abused its discretion, especially given the lack of information in the record showing a connection between the conviction and the mother's state of mind.  The record does not support the argument that Dr. Coleman's testimony would have affected the outcome.

(*Id*. at 113-14.)  The Washington Supreme Court also rejected this claim:

> . . .  He includes with his personal restraint petition an affidavit from Dr. Coleman stating that defense counsel had contacted him about the case and that he had reviewed the file.  Dr. Coleman told counsel that the interviews of the victim were flawed and that the trier of fact should be informed that the interview questions were leading and suggestive, and that he was prepared to testify to explain about scientific studies regarding memory and suggestibility.  Dr. Coleman was also concerned the mother's conversations with the victim and the counseling sessions may have influenced the victim's memory.  Before trial, counsel told Dr. Coleman that he may not use him as a witness because he could make the same points in cross-examination.  Dr. Coleman advised against this strategy.  He was ready and willing to testify, but counsel never called him.

> But as the acting chief judge noted, the jury watched a recording of the victim interview and was thus directly aware of any alleged inconsistencies between the interview and her testimony.  Defense counsel's decision to not stress these inconsistencies may have been a reasonable strategic decision, but in any event Mr. Chavez cannot demonstrate prejudice where the jury was aware of

REPORT AND RECOMMENDATION - 30

them. And Dr. Coleman's affidavit makes it clear that defense counsel had seriously considered using Dr. Coleman's proposed testimony but decided against it. Courts should not engage in second-guessing such strategic decisions. *Hendrickson*, 129 Wn.2d at 77-78; *see also Harrington v. Richter*, 562 U.S. 86, 106, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (counsel may choose cross-examination strategy over calling expert witness). Moreover, as the acting chief judge explained, Mr. Chavez cannot demonstrate prejudice because he has not shown a reasonable probability that the result would have been different had counsel chosen to rely on Dr. Coleman rather than try to make the same points in cross-examination.

(Dkt. 35 at 71-72.)

Petitioner asserts counsel should have asked for and was entitled to an in camera inspection of the counseling records. He reiterates his contentions of "child suggestibility and professional and parental 'influence'" and critiques the language and methods of defense counsel. (*See* Dkt. 1 at 123-37.) Petitioner does not, however, overcome the trial court's conclusion he no more than speculated as to the content of the counseling records, while the prosecution submitted affirmative evidence the counseling related to A.R.'s difficulty sleeping. This conclusion applies equally to a motion to compel or a request for an in camera review.

Nor does petitioner undermine the appellate courts' conclusion that use of evidence from Dr. Coleman would not have led to a different result. Petitioner states Dr. Coleman could have explained (1) A.R.'s pre-counseling history of "transferred or blended . . . memories  because of internal psychic vectors and influences of parents, interviewers, [and] police[]" and that Ms. Barbosa's statements "accompanied [A.R.] into counseling and may have tainted the counseling and caused it to reinforce pre-existing false 'memories' and supply new false memories consistent with the previous ones."; and (2) that the counseling "could harden and amplify earlier false memories and form new false ones[,]" rendering A.R.'s "trial testimony and first interview's

REPORT AND RECOMMENDATION - 31

prosecution-favoring statements more seemingly credible or defense harming." (*Id.* at 129-30 (footnote omitted).)    However, these arguments presume the counseling extended beyond discussion of and treatment for A.R.'s sleeping difficulties.    As found by the Court of Appeals, even had counsel presented testimony from Dr. Coleman, there was "no evidence to support the assertion that [A.R.] discussed the molestation during the two counseling sessions[.]" (Dkt. 29-1 at 111.)

The state court likewise reasonably found neither objectively unreasonable performance, nor prejudice in counsel's decision to not call Dr. Coleman to testify.    Strategic trial decisions, such as whether to call an expert at trial, "rest[] upon the sound professional judgment of the trial lawyer." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980). *See also Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.")    As recognized by the Ninth Circuit, "[f]ew decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial." *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999).    An attorney may decline to call a witness or expert for a variety of tactical reasons. *See*, *e.g.*, *Harrington*, 562 U.S. at 108-09 ("[M]aking a central issue out of blood evidence would have increased the likelihood of the prosecution's producing its own evidence . . .  and once matters proceeded on this course, there was a serious risk that expert evidence could destroy Richter's case. Even apart from this danger, there was the possibility that expert testimony could shift attention to esoteric matters of forensic science, distract the jury from whether Johnson was telling the truth, or transform the case into a battle of the experts."); *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000) (witness would have provided little benefit at great risk, as well as duplicative testimony); *Wilson v. Henry*, 185 F.3d 986, 989 (9th Cir. 1999) (testimony largely at variance with evidence); *Denham v. Deeds*, 954 F.2d

1501, 1505-06 (9th Cir. 1992) (decision to not call a witness counsel believed "would have done

'more harm than good' . . . reflects the skill and judgment one would expect of a reasonably

competent attorney.")

Petitioner posits that Dr. Coleman's testimony would have cured counsel's ineffective

cross-examinations, arguments, and strategy.  He states, for example, Dr. Coleman who have been

able to explain the "phenomenon" that, "[l]ike many children (like the boy who 'cried wolf')",

A.R. "may have feared being embarrassed or being scolded for doing serious wrong if she admitted

she had accused Petitioner falsely[,]" or "might have yielded her finer sensibility to pressure that

her parents, police, State's interviewer, prosecutor, or family friends wrought upon her or that, *in

her perception*, was being brought to bear."  (Dkt. 1 at 149 (emphasis in original).)

However, as observed by the Washington Court of Appeals and Supreme Court, counsel

seriously considered, but decided against calling Dr. Coleman to testify upon concluding he had

effectively drawn out the inconsistencies and other evidence pertinent to the defense in his cross-

examinations.  (Dkt. 29-1 at 113; Dkt. 35 at 72.)  A review of the trial transcript shows counsel's

implementation of this strategy.  (*See, e.g.*, Dkt. 25-1 at 544-51 (cross examination of Detective

Hamilton as to inconsistencies in witness statements and testimony and addressing issues such as

false allegations, impressionable children, and adult influences on children)).  Petitioner here again

proposes an improper second-guessing of this strategic decision.  (Dkt. 35 at 72.)  "Reliance on

'the harsh light of hindsight' to cast doubt on a trial . . . is precisely what *Strickland* and AEDPA

seek to prevent."  *Harrington*, 562 U.S. at 107 (quoted and cited sources omitted).

Nor does petitioner support his assertion of prejudice.  Under *Strickland*, "[t]he likelihood

of a different result must be substantial, not just conceivable."  *Id*. at 111-12.  In this case, the state

courts reasonably found a failure to show expert testimony from Dr. Coleman would have changed

REPORT AND RECOMMENDATION - 33

1    the outcome.

2             c.    Closing argument (Ground 3):

3        Petitioner alleges ineffective assistance in counsel's "abysmally poor, much incoherent,

4    much inane, much nonsensical, much unsupported by record evidence, much confusing, much

5    beginning unintended and unanswered questions, and darkly risible" closing argument. (Dkt. 1 at

6    159-60.) The Washington Court of Appeals rejected this claim as follows:

7                . . . Chavez claims that counsel rendered ineffective
        assistance because his closing remarks were "incoherent." But
8        again, a review of the transcript shows that counsel argued that the
        charges were not supported by proof beyond a reasonable doubt. He
9        emphasized inconsistencies in A.R.'s statements. He also argued
        that A.R. was suggestible and that her parents and law enforcement
10       rushed to judgment and misinterpreted her disclosures. Although
        Chavez asserts otherwise, he cannot demonstrate that he would not
11       have been convicted if counsel had raised different arguments or if
        counsel presented no closing argument.
12
                Chavez fails to appreciate the strength of the State's
13       evidence. This evidence included A.R.'s immediate disclosure and
        demeanor following the March 13 incident, her consistent and
14       detailed statements a few days later, and evidence of Chavez's
        reaction when immediately confronted with the allegation.
15       Nevertheless, trial counsel employed a reasonable strategy using
        cross examination and argument to highlight the potential
16       weaknesses in the State's case, including [the] fact that the victim
        did not initially report the incident in Grim's storage building, the
17       stepfather's potential bias against Chavez and suspicions about his
        relationship with A.R., and the fact that the victim's younger sister
18       did not corroborate some aspects of her report.

19               In sum, Chavez has provided extensive evidence and
        argument calling into question various decisions made by defense
20       counsel. But because he fails to demonstrate the outcome of
        proceedings would have been different if counsel had proceeded
21       differently, he fails to establish grounds for relief by merely
        suggesting that in hindsight, other actions or strategic decisions may
22       have been preferable.

23   (Dkt. 29-1 at 114-15 (footnote omitted).) Petitioner does not show the state court's adjudication

REPORT AND RECOMMENDATION - 34

of this claim was contrary to or an unreasonable application of clearly established federal law. That is, even assuming the deficiency of counsel's closing, petitioner does not show a reasonable probability the argument of counsel affected the verdict. Despite counsel's reasonable strategic choices and effort to cast doubt as to the reliability and strength of the evidence presented, the jury had significant evidence upon which to base its finding of guilt. The jury was, moreover, properly instructed to consider and base their verdict on that evidence and not on any remarks, statements, or arguments of the attorneys who presented and challenged the evidence. Petitioner is not entitled to habeas relief due to the alleged ineffective assistance of counsel in the closing argument.

2.    Equal Protection and Due Process Violations (Ground 4):

Petitioner alleges the state courts, in considering his personal restraint petition, denied him equal protection and due process by denying him an evidentiary hearing, denying a motion to release records, and by applying the wrong law, applying the right law unreasonably, or applying no law but acting arbitrarily, and by determining facts unreasonably. However, as respondent observes, a claim of error in state court collateral proceedings is not cognizable in habeas corpus. *See Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998) (because "federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings[,] . . . [t]he post-conviction relief judge's refusal to appoint counsel for Ortiz . . . cannot form the basis for federal habeas relief.") The United States Constitution "does not establish any right to collaterally attack a final judgment of conviction." *United States v. MacCollom*, 426 U.S. 317, 323 (1976). *See also Murray v. Giarratano*, 492 U.S. 1, 10 (1989) ("State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal."). Given the absence of a constitutional right to pursue a state court collateral challenge, the alleged errors in the consideration of the personal restraint

REPORT AND RECOMMENDATION - 35

petition are not cognizable in this habeas proceeding.  *See, e.g.*, *Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings. . . . Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citations omitted); *MacCollom*, 426 U.S. at 323-24 (rejecting allegations of due process and equal protection violations in the failure to provide an indigent petitioner a free transcript)

<u>CERTIFICATE OF APPEALABILITY</u>

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes petitioner is not entitled to a COA.

<u>CONCLUSION</u>

The Court recommends petitioner's motion to strike (Dkt. 38) and the habeas petition (Dkt. 1) be DENIED, and this case DISMISSED.  An evidentiary hearing is not required as the record conclusively shows petitioner is not entitled to relief.  A proposed Order accompanies this Report and Recommendation.

<u>OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect

your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 20, 2020**.

DATED this 27th day of February, 2020.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 37